UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____             │
│ DATE FILED: Sept. 27, 2012           │
└─────────────────────────────────────┘
```

--------------------------------- X
VICTOR LORENZANA,                 :
                                  :
                  Petitioner,     :
                                  :    No. 11 Civ. 6153 (JFK)
    -against-                     :       **OPINION & ORDER**
                                  :
UNITED STATES OF AMERICA,         :
                                  :
                  Respondent.     :
--------------------------------- X

APPEARANCES

Petitioner Victor Lorenzana, Pro Se

For Respondent United States of America
     Preet Bharara
     United States Attorney, Southern District of New York
         Of Counsel:  Shane T. Stansbury

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Petitioner Victor Lorenzana's ("Lorenzana") pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"). For the following reasons, Lorenzana's motion is denied.

## I.  BACKGROUND

### A.  The Indictment, Trial, and Verdict

In a twelve-count indictment filed on May 24, 2005, Lorenzana and a co-defendant were charged with various crimes relating to a series of armed robberies.  Lorenzana was charged with ten of the twelve counts in the indictment. Count One charged him with participating in a conspiracy from at least in or about 1995 through in or about 2001 to commit

armed robberies and attempted armed robberies of persons
engaged in narcotics trafficking and/or commercial activities
that affected interstate commerce, in violation of 18 U.S.C.
§ 1952.  Counts Two, Three, and Five each charged Lorenzana
as a principal or aider and abettor in Hobbs Act robberies,
in violation of 18 U.S.C. §§ 1951 and 2.  Counts Six, Seven,
and Nine each charged him with using, carrying and
brandishing a firearm during and in retaliation to particular
robberies, in violation of 18 U.S.C. §§ 924(c)(i)(A)(ii) and
2.  Count Ten charged Lorenzana with participating in a
conspiracy from at least in or about 1995 through in or about
late 2001 to distribute and possess with intent to distribute
five kilograms and more of cocaine and one kilogram and more
of heroin, in violation of 21 U.S.C. §§ 846, 812, 841(a)(1),
and 841(b)(1)(A).  Counts Eleven and Twelve each charged
Lorenzana with money laundering, in violation of 18 U.S.C.
§§ 1956(a)(1)(B)(i) and 2.

Lorenzana's trial began on June 1, 2005.  Of the
Government's twenty-three witnesses, five were longtime
associates of Lorenzana who testified that they participated
in several robberies with him.  Additional witnesses included
victims of Lorenzana's robberies, law enforcement officials
who responded to robberies and collected crime scene
evidence, a detective in the New York Police Department who

took part in court-ordered searches of accomplices'
residences and vehicles, and an Alcohol, Tobacco, Firearms
and Explosives Special Agent who conducted surveillance of
Lorenzana and interrogated him upon his arrest.

The Government also introduced a bevy of physical
evidence, including seized firearms and ammunition (six guns
were found at one of Lorenzana's prior residences), tools
used during the robberies, such as radios, walkie-talkies,
scanners, cable ties, handcuffs, a bulletproof vest,
crowbars, as well as crime scene photographs.

On June 29, 2005, the jury convicted Lorenzana on all
counts, with the exception of the second money laundering
count (Count Twelve).

## B.  Post Trial Motions

After the jury verdict, Lorenzana made a Rule 29 motion
for a judgment of acquittal and moved for a new trial
pursuant to Rule 33 of the Federal Rules of Criminal
Procedure.  First, he claimed that he was deprived of his
right to be present at all material stages of the trial
because the Court conducted interviews of a juror outside of
his presence (although his attorney was present).  Second, he
claimed that his trial counsel was ineffective for failing to
advise him of what had transpired during those interviews.
Lorenzana also challenged the Court's jury instructions

3

regarding the interstate commerce element of the Hobbs Act
and, further argued that the Government failed to prove that
element beyond a reasonable doubt.  Finally, Lorenzana argued
that his Sixth Amendment rights were violated because the
stabbing victim from the Crystal House robbery was not called
as a witness by the Government.  On January 3, 2007, this
Court denied Lorenzana's motion in its entirety.  U.S. v.
Lorenzano, 03 Cr. 1256, 2007 WL 29231 (S.D.N.Y. Jan. 3,
2007).

### C.  Sentencing

On January 16, 2007, Lorenzana was sentenced to a total
of 87 years' imprisonment, five years' supervised release,
and a $900 special assessment.

### D.  Direct Appeals

On appeal before the Second Circuit, Lorenzana raised
the same issues detailed in Part I.B, above.  By Summary
Order dated June 2, 2010, the Second Circuit affirmed the
judgment of conviction against Lorenzana.  Although the
Second Circuit found that the jury instructions regarding the
interstate commerce element of the Hobbs Act robbery charges
were improper, it concluded that the error was harmless.  The
Second Circuit reasoned that the Hobbs Act requires "'a very
slight effect on interstate commerce,'" and the Government's
evidence that "the victims of one of the robberies sold drugs

in Connecticut, New Jersey, and Maryland, and that Lorenzana
and his crew used the proceeds of the drug robberies to
travel out of state" was sufficient to establish such an
effect.  In addition, the Second Circuit pointed out that
"the targeted drug dealers trafficked in cocaine and heroin,
drugs that cannot be produced in New York." Id. (citations
omitted).  Subsequently, the Second Circuit denied
Lorenzana's petition for a rehearing en banc, and the Supreme
Court denied Lorenzana's petition for writ of certiorari.
Lorenzana v. United States, 131 S. Ct. 837 (2010).

Lorenzana's pro se memorandum accompanying his Section
2255 petition ("Pet'r Mot.") cites eleven "Grounds" to set
aside his sentence.  The Government has filed a memorandum in
opposition to Lorenzana's Section 2255 motion along with
various exhibits ("Gov. Ex."), and in response, Lorenzana has
submitted a reply memorandum ("Pet'r Reply").  In a later-
filed submission, Lorenzana seeks to add a twelfth ground to
his Section 2255 petition ("Pet'r Add. Mot.").

## II. Section 2255 Standard of Review

Section 2255 allows a prisoner held in federal custody
to collaterally challenge his federal conviction or sentence.
28 U.S.C. § 2255(a).  To obtain relief under this provision,
a petitioner must establish "a constitutional error, a lack
of jurisdiction in the sentencing court, or an error of law

or fact that constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). As Lorenzana is proceeding pro se, his submissions will be "liberally construed in his favor," Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)), and will be read "to raise the strongest arguments that they suggest." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citing Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).

Two theories of claim preclusion can operate to bar a Section 2255 collateral challenge. Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010). First, under the "mandate rule," petitioners may not re-litigate issues that were "expressly and impliedly" decided on direct appeal. Id. Second, any claims "that could have been brought on direct appeal [may not be] raised on collateral review absent cause and prejudice," id. at 54, or "actual innocence." Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007). Importantly, ineffective assistance of counsel claims are not subject to these claim preclusion limitations. Massaro v. United States, 538 U.S. 500, 509 (2003) ("We do hold that the failure to raise an ineffective-assistance-of-counsel claim

on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255.").

### III. DISCUSSION

In his reply memorandum, Lorenzana withdraws his first, seventh, and eighth grounds for relief because they were addressed by the Second Circuit on direct appeal. (Pet'r Reply at 1).  The Court will therefore focus its analysis on the remaining issues.

### A. Ineffective Assistance of Counsel Claims

Grounds Two, Four, Five, Nine, Ten, Eleven, and Twelve all raise various claims of ineffective assistance of counsel against Lorenzana's trial counsel and appellate counsel.  To obtain relief for ineffective assistance of counsel, a petitioner must satisfy a two-part inquiry set forth in Strickland v. Washington, 466 U.S. 668 (1984). See also United States v. Lin Guang, 511 F.3d 110, 120 (2d Cir. 2007). The petitioner must first show that his "counsel's representation fell below an objective level of reasonableness." Strickland, 466 U.S. at 688.  For this part of the analysis, "'a court must indulge a strong presumption that a counsel's conduct falls within the wide range of reasonable professional assistance.'" Bierenbaum v. Graham, 607 F.3d 36, 51 (2d Cir. 2010) (quoting Strickland, 466 U.S. at 689)).

Next, the petitioner must "show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.  That is, the petitioner must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; see also Harrington v. Richter, 131 S. Ct. 770, 791-92 (2011) ("In assessing prejudice . . . Strickland asks whether it is 'reasonably likely' the result would have been different.").

Although the Strickland test was established to evaluate ineffective assistance of trial counsel, it is also applicable to appellate counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).  Appellate courts have admonished, however, that Strickland does not require an appellate counsel to assert every possible argument on appeal.  "In attempting to demonstrate that appellate counsel's failure to raise a claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." Id.  Moreover, "[o]n appeal, attorneys are not required to raise every colorable claim . . . but are entitled to exercise their professional judgment to focus on one or two key issues while winnowing out weaker arguments."

Benn v. Stinson, 917 F. Supp. 202, 206 (S.D.N.Y. 1995).   A
petitioner can demonstrate ineffective assistance by showing
that appellate counsel "omitted significant and obvious
issues while pursuing issues that were clearly and
significantly weaker." Mayo, F.3d at 533.

### 1. Ground Two

Lorenzana first argues that his appellate counsel was
ineffective for raising an ineffective assistance of trial
counsel claim on direct appeal, despite "conventional wisdom"
that the issue should have been reserved for this habeas
petition. (Pet'r Mot. at 12-15).   According to Lorenzana,
"appellate counsel should have known that pursuant to Massaro
v. United States, 538 U.S. 500 (2003), a federal prisoner is
generally required . . . [to] defer raising claims of
ineffective assistance of counsel on direct appeal because
the claims require development of the facts not in the trial
record." (Pet'r Mot. at 13).

Lorenzana is mistaken that Massaro requires ineffective
assistance claims to be reserved for Section 2255 motions.
Massaro, 538 U.S. at 508 ("We do not hold that ineffective-
assistance claims must be reserved for collateral review.").
As the Second Circuit has noted, where ineffective assistance
claims are raised on direct appeal, the Court of Appeals "may
do one of three things:  (1) decline to hear the claim,

9

permitting the appellant to raise the issue as part of a subsequent 28 U.S.C. § 2255 petition; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before [the appellate court]." United States v. Price, 443 F. App'x 576, 578 (2d Cir. 2011) (internal citations omitted); see United States v. Arakelian, 218 F. App'x 76, 79 (2d Cir. 2007).

Here, appellate counsel's decision to pursue an ineffective assistance claim on direct appeal was prudent, as evidenced by the fact that the Second Circuit elected to address the claim. See United States v. Lorenzana, 07-0256, 2010 WL 2202813 (2d Cir. June 2, 2010).  Accordingly, the Second Circuit necessarily made the determination that the factual record pertaining to Lorenzana's ineffective assistance claim was sufficiently developed.  As Lorenzana does not point to any new facts pertaining to his claim of ineffective assistance, compare (Pet'r Mot. 12-15) and (Pet'r Resp. 12-14) with (Gov. Ex. D at 34-39), he cannot establish that his appellate counsel was unreasonable to assert the claim on direct appeal.

### 2.  Ground Four

Lorenzana next alleges that his trial and appellate counsel were ineffective because both had an excessive caseload, (Pet'r Mtn. 19-20), yet does not offer any facts to

10

support this claim.  Instead, Lorenzana makes the conclusory allegation that his attorneys were court-appointed, and therefore must have been overburdened.  Conclusory allegations are insufficient to sustain habeas corpus relief based on Strickland. See United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987) (finding that claims resting on "airy generalities" and "conclusory assertions" are inadequate to sustain a claim under Section 2255); see also Matura v. United States, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995) (finding that petitioner's conclusory assertions of ineffective assistance, without any allegations of fact to support the assertions, failed "to establish that his counsel's performance was deficient [and] . . . fail[ed] to overcome the presumption [under Strickland] that counsel acted reasonably.").

### 3. Ground Five

Lorenzana also argues that his trial counsel was ineffective for failing to "adequately investigate Lorenzana's mental competency and ability to adequately participate in the trial proceedings." (Pet'r Mtn. 21). Lorenzana further contends that his counsel at sentencing was ineffective for failing "to seek a downward departure at sentencing [for diminished capacity] pursuant to U.S.S.G. § 5k2.13." (Pet'r Mtn. 21-22).

Other than Lorenzana's conclusory statements, there is
nothing in the record sufficient to overcome the substantial
evidence of Lorenzana's competency. See United States v.
Romano, 516 F.2d 768, 771 (2d Cir. 1975); see also Newfield
v. United States, 565 F.2d 203, 207 (2d Cir. 1977) ("[W]here
no evidentiary facts are alleged to support a bald allegation
of mental incompetence, a hearing may not be required.").
Lorenzana has provided no evidence that he lacked the ability
to consult with his attorney or did not understand the nature
of the proceedings against him.  Moreover, nothing in the
record, including the presentence report and accompanying
medical evaluation of Lorenzana, raises any questions as to
Lorenzana's competency.  As a result, his claim that his
trial and sentencing counsel did not address his mental
capacity is meritless. See Chavez v. United States, 764 F.
Supp. 2d 638, 643 (S.D.N.Y. 2011).

### 4. Grounds Nine, Ten, and Eleven

Next, Lorenzana states that his appellate counsel was
ineffective for failing to raise a due process claim with
respect to the interstate commerce element of the Hobbs Act.
According to Lorenzana, his due process rights were violated
because he did not have adequate notice that the element
could be met by the Government's reference to the Controlled

Substances Act (CSA), which provides that all drug dealing affects interstate commerce. (Pet'r Mot. at 32-37).

Although Lorenzana's appellate counsel did not address the purported due process violation based upon the interstate commerce element of the Hobbs Act, appellate counsel did challenge the appropriateness of this Court's jury instructions on that issue. (Gov. Ex. E at 4-7). Specifically, appellate counsel argued that the instructions violated United States v. Parkes, 497 F.3d 330 (2d Cir. 2007), because they removed the interstate commerce element from the jury's consideration. (Gov. Ex. E at 4-7).  This strategy proved sensible, as the Second Circuit agreed that the jury instructions were erroneous. Lorenzana, 2010 WL 2202813 at *2.  The Second Circuit also found that the Government met its burden as to the interstate commerce element, independent of any reference to the CSA. Accordingly, it would have been fruitless to argue that establishing interstate commerce by reference to the CSA violated due process.

Lorenzana's tenth ground for relief is that his appellate counsel was ineffective for failing to argue that Lorenzana's convictions and sentences for multiple substantive Hobbs Act violations, conspiracy to commit Hobbs Act robberies, and 18 U.S.C. § 924(c) constituted double

13

jeopardy. (Pet'r Mot. at 38-50).  Here again, Lorenzana fails
to demonstrate any significant omissions by his attorney.
The Constitution's Double Jeopardy Clause does not bar
charging and sentencing a defendant as to both substantive,
and conspiracy counts of the Hobbs Act. See Iannelli v.
United States, 420 U.S. 770, 777 (1975) ("[T]he law has
considered conspiracy and the completed substantive offense
to be separate crimes.").  Similarly, the Double Jeopardy
Clause does not prohibit convictions for multiple violations
under 18 U.S.C. § 924(c), when such violations are based on
"different predicate crimes." United States v. Marcano, 06-
2949, 2008 WL 3992382, at **2 (2d Cir. Aug. 22, 2008) (citing
United States v. Bernier, 954 F.2d 818, 819-20 (2d Cir.
1992)).  In light of longstanding precedent that substantive
and conspiracy Hobbs Act charges are distinct for double
jeopardy purposes, Lorenzana's appellate counsel
appropriately excluded this argument on appeal.

Lorenzana's eleventh ground for relief is that his
appellate counsel was ineffective for failing to argue that
the Government committed prosecutorial misconduct.  Lorenzana
argues that the Government presented perjured testimony to
the Grand Jury concerning the victim in the Crystal House
robbery. (Pet'r Mot. at 51-57).  Because Lorenzana has not
provided any facts to support his accusation, this

14

speculative claim does not warrant scrutiny under Strickland.
See, e.g., Matura v. United States, 875 F. Supp. 235, 237–38
(S.D.N.Y. 1995).

### 5. Ground Twelve

Lorenzana added a twelfth ground for relief on January
3, 2012, after the one-year statute of limitations for
Section 2255 claims expired.  In this additional claim,
Lorenzana argues that his trial counsel was ineffective for
failing to "explain to him the pros and cons of pleading
guilty as opposed to going to trial" and the ramifications
for sentencing. (Pet'r Add. Mot. at 1).  Other than his own
account, Lorenzana does not offer any facts to show that his
trial counsel did not explain the benefits of taking the
Government's plea offer, or that the charges against
Lorenzana carried mandatory consecutive sentences under 18
U.S.C. § 924(c).  Without such evidence, "it must be assumed"
that Lorenzana's trial counsel "accurately advised
[Lorenzana] of the sentence he faced." Colotti v. Untied
States, 11 Civ. 1402, 2011 WL 6778475, at *23 (S.D.N.Y. Dec.
21, 2011).  Therefore, this unsupported claim is insufficient
to warrant relief.

### B. Remaining Grounds:  Three and Six

In his last two grounds, Lorenzana argues that this
Court "lacked subject matter jurisdiction" to adjudicate the

charges against him because the interstate commerce element
of the Hobbs Act was not properly established by the
Government. (Pet'r Mot. at 16-18, 23-26).  As explained
below, this argument confuses a district court's subject
matter jurisdiction with the interstate commerce element of a
Hobbs Act robbery.

A district court's jurisdictional authority to
adjudicate criminal cases is not contingent on the individual
criminal statute under which a defendant is charged and
convicted; rather, jurisdiction is derived from 18 U.S.C.
§ 3231, which provides that "district courts of the United
States shall have original jurisdiction, exclusive of the
courts of the States, of all offenses against the laws of the
United States." 18 U.S.C. § 28(a); see also United States v.
Hargove, 293 F. App'x 95, 96 (2d Cir. 2008) ("Defendant's
challenge to the District Court's jurisdiction is without
merit because the District Court had jurisdiction . . .
pursuant to 18 U.S.C. § 3231.").  Accordingly, an indictment
charging a defendant with crimes in violation of the laws of
the United States is sufficient for a district court to
acquire subject matter jurisdiction. United States v. Si Lu
Tian, 339 F.3d 143, 147 (2d Cir. 2003) ("Subject matter
jurisdiction was proper in the district court because [the

defendant] was charged with offenses against the laws of the United States.").

The interstate commerce element of the Hobbs Act is a separate consideration from the subject matter jurisdiction of a district court. See Hugi v. United States, 164 F.3d 378, 380-81 (7th Cir. 1999). As the Seventh Circuit observed:

> [T]he nexus with interstate commerce which courts frequently call the jurisdictional element, is simply one of the essential elements of [the offense]. Although courts frequently call it the jurisdictional element of the statute, it is jurisdictional only in the shorthand sense that without that nexus, there can be no federal crime . . . . It is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, i.e., a court's constitutional or statutory power to adjudicate a case, here authorized by 18 U.S.C. § 3231.'

Id. (internal citations and quotations omitted).

Here, this Court acquired subject matter jurisdiction under 18 U.S.C. § 3231 because Lorenzana was indicted on various offenses against the laws of the United States. As a result, Lorenzana's assertion that the Government did not establish the interstate commerce element of the Hobbs Act at trial has nothing to do with whether this Court had subject matter jurisdiction. Rather, this assertion bears on the interstate commerce element of the Hobbs Act, which was explicitly addressed by the Second Circuit, so Lorenzana is procedurally barred from raising this argument. See Lorenzana, 2010 WL 2202813 at *1.

17

## IV. CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate, set aside or correct his sentence pursuant to Section 2255 is denied.

The court certifies, pursuant to 28 U.S.C. § 1951(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Furthermore, as the Petitioner makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253.

**SO ORDERED.**

Dated:     New York, New York
           September 27, 2012

                              John F. Keenan
                       United States District Judge

18